**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **VICTOR SUAZO GOMEZ** | **CIVIL ACTION NO. 1:26-CV-00220 SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **BRIAN ACUNA ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING AND ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by Petitioner Victor Suazo Gomez ("Gomez"), an immigration detainee at the Jackson Parish Correctional Center in Jonesboro, Louisiana.  The federal Respondents ("the Government") answered the Petition (ECF No. 6).  Gomez did not submit a reply.

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is GRANTED.

## I.    Background

Gomez is a native and citizen of Honduras.  ECF Nos. 1 at 2.  He entered the United States as a minor on March 23, 2016.[1]  ECF Nos. 1 at 2; 1-5 at 5.  According to the Immigration Judge, Gomez was processed as part of a family unit upon entry into the United States.  ECF No. 6-3 at 3.  He resided with family until he was re-detained in 2025.

On October 14, 2022, Gomez was mailed a Notice to Appear, charging him as removable under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) as a noncitizen present in the

---

[1] Gomez alleges that he entered as an unaccompanied minor child and was released to the custody of the Department of  Human Services.  ECF No. 1 at 2.  He was then reunited with his mother in Alabama.  *Id.*  The Government maintains that DHS records contain no such information.  ECF No. 6 at 8.

United States without having been admitted or paroled and without valid entry documents. ECF No. 1-5 at 1.

Gomez alleges that he was re-detained in 2025 following his arrest on state criminal charges in 2025[2].  ECF No. 1 at 2, 6.

At an immigration hearing on March 23, 2026, Gomez admitted the factual allegations contained in the Notice to Appear and conceded removability.  ECF No. 6-3 at 1.  During the removal proceedings, Gomez sought adjustment of status under INA § 245(a), arguing that his initial release constituted a qualifying parole into the United States.  ECF No. 6-3 at 1-2. Gomez testified that he was initially detained for one week after entering the United States. *Id.* at 3-5.  After an evidentiary hearing, the Immigration Judge rejected that argument, finding Gomez failed to establish that he entered as a unaccompanied alien child ("UAC") or that he had received parole under INA § 212(d)(5)(A).  *Id.*  The Immigration Judge further concluded that Gomez was statutorily ineligible for adjustment of status and ordered him removed to Honduras.  *Id.*

According to the Executive Office for Immigration Review's automated case information system, Gomez appealed the removal order to the Board of Immigration Appeals ("BIA"), and that appeal remains pending.[3]  Accordingly, the removal order is not yet administratively final.

II.    **Law and Analysis**

Gomez contends that the Government lacks statutory authority to detain him under 8 U.S.C. § 1225(b), arguing instead that he is subject to detention under 8 U.S.C. § 1226(a) and therefore entitled to an individualized bond hearing. He further contends that the

---

[2] Gomez alleges that he was arrested for possession of marijuana, possession of drug paraphernalia and driving with no license.  ECF No. 1 at 2.
[3] https://acis.eoir.justice.gov/en/caseInformation

Government violated the Due Process Clause of the Fifth Amendment by re-detaining him after allowing him to remain at liberty in the United States for nearly ten years without first providing notice, a hearing, or any individualized determination that continued detention was warranted. Finally, Gomez asserts that his continued detention violates substantive due process because it bears no reasonable relationship to the Government's asserted interests. ECF No. 1 at 13-20.

The Government responds that Gomez's detention is mandatory under § 1225(b)(2), as interpreted by the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and that no additional process is constitutionally required. The Government further argues that Gomez has not established that he entered the United States as a UAC or that he was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  ECF No. 6.

The Court agrees that the Fifth Circuit's decision in *Buenrostro-Mendez* forecloses any argument that Gomez is detained under the incorrect statutory provision.  That conclusion, however, does not resolve Gomez's constitutional claim.

This Court has repeatedly recognized that the question of whether Congress authorized detention under § 1225(b) is analytically distinct from whether the Government may revoke a liberty interest without affording constitutionally adequate process.  *See Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La. Mar. 5, 2026), *Kilic v. Acuna, et al.*, 1:25-CV-01928, 2026 WL 1652575, at \*2 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. April 29, 2026); *Andrade-Cunalata v. Wyatt*, No. 3:26-CV-01155 (W.D. La. July 16, 2026).

**Procedural Due Process**

As previously explained in *Diallo, Kilic, Ghughunishvili, Garcia-Gil, Andrade-Cunalata* and other cases, Gomez's procedural due process claim is separate and apart from whether he is ultimately subject to mandatory detention under § 1225(b). Rather, the question is whether, after the Government permitted him to remain at liberty in the United States for almost 10 years, the Fifth Amendment required some form of individualized process before that liberty could be revoked. *See Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7, *9 (W.D. Tex. Oct. 21, 2025).

Neither *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020), *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor *Buenrostro-Mendez* forecloses Gomez's constitutional claim.   As this Court observed in *Diallo*, those decisions address Congress's statutory detention authority and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Under *Mathews*, courts consider: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interests, including the burdens of additional procedures.

1.      **Private Interest**

"The interest in being free from physical detention is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem*, 5:25-CV-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Although *Buenrostro-Mendez* establishes that § 1225(b) authorizes mandatory detention, it does not eliminate the liberty interest that

developed after the Government knowingly permitted Gomez to remain at liberty in the United States for almost 10 years before re-detaining him.

Unlike cases involving individuals who lived in the United States without the Government's knowledge until their eventual apprehension, *see Sosnava-Rodriguez v. Ortega*, 26-50183, 2026 WL 1906557, at *15 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated*, 2026 WL 2014647 (5th Cir. July 10, 2026), Gomez's re-detention did not result from the Government's first discovery of his presence.  In fact, DHS knew of Gomez's presence, as the Immigration Judge noted that Gomez was processed as part of a family unit.  ECF No. 6-3 at 3; *see also* ECF Nos. 1-5 at 5; 6-2 at 1.  DHS placed him on a non-detained immigration docket.  ECF No. 6-2 at 1.  The Government knew Gomez's address and remained apprised of changes to it.  ECF No. 1-5 at 1, 7.  It knowingly permitted him to remain at liberty while his immigration proceedings were pending.  Thus, regardless of the legal characterization of Gomez's initial release, the Government knowingly permitted him to reside in the community while his immigration proceedings progressed before re-detaining him in December 2025.

Thus, the first factor strongly favors Gomez.

### 2.    Risk of Erroneous Deprivation

The second *Mathews* factor likewise favors Gomez.  The Government re-detained Gomez without providing advance notice, an opportunity to be heard, or any individualized process before depriving him of his liberty. As this Court noted in *Andrade-Cunalata*, the complete absence of procedural safeguards creates a substantial risk of erroneous deprivation because the Government alone determines when a previously granted liberty interest will be revoked.

The Government argues that no additional procedures are constitutionally required because Gomez is subject to mandatory detention under § 1225(b), and dangerousness and

5

flight risk are legally irrelevant to that determination. ECF No. 6 at 15.  But Gomez's procedural due process claim does not depend on whether he ultimately is entitled to a discretionary bond hearing under § 1226(a).  Instead, he contends that the Government violated the Fifth Amendment by revoking the liberty it had permitted him to enjoy for years without first providing constitutionally adequate process.

Moreover, minimal procedural safeguards could reduce the risk of erroneous deprivation without altering the statutory detention framework. At a minimum, notice of the reasons for re-detention and an opportunity to contest the factual issues surrounding the revocation of Gomez's liberty would provide meaningful procedural protection while leaving the ultimate statutory detention determination intact.  The Due Process Clause requires only such procedural protections as the particular situation demands. *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In fact, this case illustrates why some measure of process has value.  The precise circumstances of Gomez's original release remain disputed.  The record does not conclusively establish whether Gomez entered as an unaccompanied alien child (ECF No. 1 at 2), whether he was processed as part of a family unit (ECF No. 6-3 at 3, 6), how long he was initially detained, and when or how he was released into the United States to travel to Mobile, Alabama (ECF No. 6-2 at 1).  Providing notice and an opportunity to be heard before revoking that liberty interest would help ensure that any deprivation rests on an accurate factual foundation.

The Government's reliance on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), is unpersuasive.  Unlike *Doe*, which involved inclusion on a public registry based solely on a prior conviction, this case concerns the deprivation of physical liberty following almost 10 years during which the Government knowingly permitted Gomez to remain in the community.  Because Gomez received no individualized process before that

liberty was revoked, the risk of erroneous deprivation weighs in favor of requiring additional procedural safeguards.

### 3.    Government's Interest

The Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those individuals whom Congress has made subject to § 1225(b).

Providing constitutionally adequate procedures before revoking previously granted liberty does not undermine Congress's determination that applicants for admission are generally subject to mandatory detention.  Rather, it requires only that the Government afford constitutionally adequate procedures before withdrawing liberty it has previously conferred.  Due process protections remain even when government authorities have discretion to revoke supervision.  *See Mendoza v. Noem*, 823 F.Supp.3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26-CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

Balancing the three *Mathews* factors, the Court concludes that the Government violated Gomez's procedural due process rights by re-detaining him without affording any individualized process after permitting him to remain at liberty for almost 10 years.  This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory question of detention authority, but not the separate constitutional question of whether the Government may revoke an established liberty interest without affording due process.

Because the Court concludes that Gomez is entitled to relief on his procedural due process claim, it need not address his remaining substantive due process arguments.

7

### III.    Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.  Respondents are ORDERED to provide Gomez with an individualized bond hearing within seven (7) days or release Gomez from custody under the appropriate conditions.

THUS DONE in Chambers on this 22nd day of July, 2026.

_____
Jerry Edwards
United States District Judge

8